No. 2-22-0109
Opinion filed March 29, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-1110 |
| JAMES B. TALIDIS, | ) ) ) | Honorable Robert A. Wilbrandt Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Schostok and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    In November 2018, defendant, James B. Talidis, was charged with driving while his license was revoked (625 ILCS 5/6-303(d-5) (West 2018)). He retained private counsel, Ray Flavin, and his case remained pending for approximately two years. In October 2020, Flavin moved to withdraw. Defendant also moved to proceed *pro se*, and the court advised him about his rights and the difficulties of representing oneself. Defendant assured the court that he understood and persisted in his desire to represent himself. The court allowed Flavin to withdraw and granted defendant's motion to proceed *pro se*. Defendant's case remained pending for six more months. Although the trial court repeatedly continued the case to allow defendant to file various motions, he never filed any motions before trial. On April 22, 2021, the court appointed Assistant Public

Defender Kim Messer as standby counsel for defendant. Four days later, on the day of trial, defendant refused to participate in the trial. The court ordered Messer to serve as defendant's counsel of record. Messer, who expressed reservations about the court's ability to appoint her as counsel of record when defendant wished to proceed *pro se*, asked for a continuance, advising the court that she was unprepared for trial. The court denied the motion. The court found that, under section 115-4.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4.1(a) (West 2020)), it was required to appoint counsel for defendants tried *in absentia* and that nothing in section 115-4.1(a) mandates that counsel be prepared for trial. Following trial, the jury found defendant guilty. Messer moved for a new trial, arguing, among other things, that the court erred in denying her motion for a continuance. The court denied that motion. This timely appeal followed. The overriding issue presented on appeal is whether the trial court denied defendant's right to a fair trial when it appointed Messer to conduct defendant's trial and denied her request for a continuance. We determine that no error occurred. Thus, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On November 12, 2018, defendant was driving on Illinois State Route 14 in Crystal Lake. Two police officers saw defendant drive into a parking lot off Route 14, disobeying a do-not-enter sign to avoid an upcoming red traffic signal. The police officers stopped defendant and discovered that his license was revoked. At the time, defendant had several prior convictions in Illinois and other states for driving while his license was revoked or suspended.

¶ 4      The McHenry County Public Defender's Office was appointed to represent defendant only in setting bond, which defendant posted. Flavin entered an appearance for defendant in December 2018. Defendant failed to appear at a later court date, his bond was forfeited, and a warrant for his arrest was issued. The bond forfeiture was later vacated, and defendant's jury trial was set for

October 2019, approximately one year after his arrest. Defendant failed to appear on a status date right before trial, his bond was again forfeited, and a new bond amount was set. Defendant failed to post bond and remained in custody thereafter.

¶ 5     In June 2020, the court set July 28, 2020, as defendant's trial date. On July 28, 2020, Flavin advised the court that he could not proceed with trial because defendant wanted extensive discovery for which Flavin apparently had not asked. The court questioned continuing the case to a date too far in the future, as the case was "two years old" and driving-after-revocation cases "aren't the most extensively litigated and discoverable cases." After advising the court that it was ready for trial, the State said that it "[did not] know what discovery they are looking for, but [it did not] have a problem turning that over and getting the [trial] date." The court asked Flavin if November would be acceptable for a trial, and he replied, "You haven't heard the list [of discovery materials] yet ***." The court responded that it was "sure there is a vast list, but *** it's a two-year old driving while license [revoked] case." The court set November 2, 2020, as the trial date.

¶ 6     On October 26, 2020, seven days before trial, Flavin filed a motion to withdraw for "professional reasons." At the pretrial conference on October 29, 2020, both Flavin and defendant advised the court that defendant wanted Flavin to withdraw because defendant was not pleased with Flavin's representation. The court denied the motion but noted that it would reconsider the matter on the trial date.

¶ 7     The next day, October 30, 2020, the parties appeared before the court. Flavin advised the court that defendant wished to proceed *pro se*. The following exchange took place.

> "THE DEFENDANT: *** I feel at this time I would like to represent myself, number one, and assert that right [to represent myself].

Number two, there's several pretrial issues that I feel need to be filed on and in the record and preserved for the purpose of appeal. And in order to do such properly, I would need to review discovery, which I have not done.

So with that being said, I would be asking for the Court to allow me to enter my appearance and to file the proper pretrial motions so I may preserve those contentions of error on the record for the purpose of appeal.

THE COURT: Mr. Talidis, you have the right to an attorney. You have the right to an attorney appointed for you if you cannot afford an attorney.

I can advise you that proceeding with a jury trial is a very difficult undertaking and that you would be held to the same standards as an attorney should you decide to represent yourself. It is usually not a good idea to represent yourself in a jury trial. Do you feel that you have reached a point where your attorney is not representing you and that you cannot cooperate or that you are unable to continue your relationship with your attorney at this time?

THE DEFENDANT: I certainly do, Your Honor.

THE COURT: And can you tell me why?

THE DEFENDANT: Well, we've had a couple falling outs in regards to me having access to reviewing and preparing for trial.

In several instances where I believe that my attorney possibly has been dishonest with me. But again, there's a lot of stuff I don't know, and that is because I haven't reviewed all of the disclosure discovery, and that's a problem.

THE COURT: Do you understand that if you are allowed to represent yourself, I will not allow you to seek a public defender to represent you? Do you understand that?

THE DEFENDANT: I do, Your Honor. I've actually represented myself at trial before, so.

THE COURT: Can you tell me what experience you've had in representing yourself at trial?

THE DEFENDANT: I did garner a not guilty on the basis of the whole trial, the charge that initiated the whole thing; and I did very well.

I do understand the concepts and doings that are necessary to prepare for trial. So with that being said, I would ask that you allow me to assert my Sixth Amendment Right to represent myself *sui juris* in full capacity, which I am.

THE COURT: Do you feel that Mr. Flavin can effectively represent you?

THE DEFENDANT: No, I do not.

THE COURT: And understanding that you will be required to represent yourself once you make this choice, do you still wish to proceed as your own attorney at this time, understanding you have a right to an attorney, understanding that an attorney can be appointed for you if you are indigent, and understanding that you will be required to represent yourself in the future without an attorney? Do you still wish to represent yourself, and do you still feel that Mr. Flavin is not an effective counsel for you?

THE DEFENDANT: I do, Your Honor.

THE COURT: Do you wish to proceed with your trial on Monday?

THE DEFENDANT: No, I don't because I haven't even seen the discovery in full, so. And I have several motions that are in the works right now. If you want to look at them, I have them on my [universal serial bus (USB) drive]. They're not complete because I don't have the full discovery. But they are very close to being completed.

So what I'd like to do is on Monday to have prepared for you a very good—what I believe is to a rock solid motion to dismiss based on fatally defective instruments.

THE COURT: Your attorney—You have discussed these motions with your attorney; is that correct?

THE DEFENDANT: I haven't. We have had a falling out, Your Honor. So therefore I have taken a different path, and I will be proceeding on my own."

¶ 8 When the court asked the State for its input, it did not object to defendant proceeding *pro se* but did object to continuing the case. The court asked the State if it believed defendant was moving to continue the case as a delay tactic, and the State said no. The court granted Flavin's motion to withdraw, granted defendant's motion to proceed *pro se*, and continued the case on defendant's motion. The court found that defendant's request for a continuance was not made to delay the proceedings.

¶ 9 The court then ordered Flavin to turn over to defendant the discovery he received from the State, "minus certain items that the Court has said in conference were for good cause shown not to be turned over."[1] The court determined that this excluded evidence "[was not] particularly relevant to [defendant's] case." Although this material was not tendered to defendant, Flavin had reviewed it with defendant, who "expressed the opinion that it was incomplete." Apparently believing that defendant was wrong, the court dismissed defendant's opinion, stating, "All right. Good enough." The excluded material was placed in a confidential folder in the court's file. In open court, Flavin tendered to defendant the grand jury minutes, a police report, and two copies of

---

[1]The record indicates that this evidence, which concerned one of the officers, would be inadmissible at trial.

defendant's Minnesota driving record, which delineated the basis for the revocation of defendant's license in that state. The State noted that it also had a video recording from the arresting officers' squad car. The State explained that defendant had requested the video but the jail would not accept it. The court ordered the jail to allow defendant to review the video.

¶ 10    In setting the next court date, the court asked defendant when he would be ready to file his motions. Defendant asserted that he was "pretty close to having them ready" and could file them "[s]ometime later in the [next] week." Accordingly, the court set November 6, 2020, as the date to set the case for trial and the deadline for defendant to file his motions.

¶ 11    On November 6, 2020, defendant "[did not] have any motions prepared as of yet." Defendant explained that he was "still not satisfied with complete discovery being tendered over to [him]." Defendant told the court that he had almost completed the list of discovery he wanted and could fax it to the State in the next few days. The court continued the case to November 12, 2020, for defendant to file his motions.

¶ 12    On November 12, 2020, the State tendered to defendant in open court the materials he had requested. The court then asked defendant if he had any motions to file. Defendant said, "I don't, Your Honor. I—" The court interjected that it would rule on defendant's "request for all the transcripts." The court said defendant was entitled to only one of the requested transcripts, and the court ordered that the transcript be prepared for him. With that said, the court asked defendant when he could file his motions. Defendant informed the court that he was "busy on some other motions. The court then inquired when defendant wanted to set the case for trial. Defendant objected to setting a trial date. The court noted the objection and set January 4, 2021, as the trial date.

¶ 13    The court next asked defendant if he could file his motions before that date. Defendant indicated that he could. The court then invited defendant "to tell [it] whatever else [he] want[ed] to say." Defendant asked to review the clerk's file, and the court declined that request, advising defendant that "[he was] being given the things that [he] need[ed] to prepare for [his] case." Defendant disagreed, and the court noted his position. Defendant then told the court that he was "just waiting on transcripts," and the court replied, "You're going to get the transcript as soon as I can get it to you." Defendant responded, "Very good." The court continued the case to December 3, 2020, for status, asking defendant if he could file his motions by then. Defendant said that he could.

¶ 14    The parties next appeared before the trial court on December 8, 2020, the trial court asked defendant if he had motions to file. Defendant said that he did not, telling the court that his father had just passed away. Defendant also told the court that he was "still waiting on those transcripts that [he] had requested." Defendant mentioned two missing transcripts. The State advised the court that one of the proceedings in question was not transcribed. As to the other proceeding—the October 29, 2020, pretrial conference—the State said it would provide defendant that transcript. The court then told defendant that all jury trials were postponed due to the COVID-19 pandemic. The court set January 6, 2021, for status.

¶ 15    On January 6, 2021, defendant advised the court that he was given the requested transcript late the night before. The court asked defendant when he would like to have his trial. Defendant said that, because of mitigating evidence he discovered after reviewing supplemental discovery, he would like a continuance to discuss with the State a possible plea agreement. The assistant state's attorney, who had not been present during earlier proceedings, was unaware of any offers. Nevertheless, he agreed to continue the case to February 10, 2021.

¶ 16    On February 10, 2021, the State advised the court that it received a letter from defendant seeking to enter a plea agreement. The State offered defendant the minimum sentence, which was a better offer than defendant had received while represented by Flavin. Defendant asked the court for time to consider the offer, and the court set the case for status on February 24, 2021.

¶ 17    On February 24, 2021, defendant tendered to the State in open court his supplemental discovery request. In reviewing that document, the State advised the court that, "[j]ust glancing at it, some of [it] may have already been tendered." The State asserted it would "do [its] best to respond to that." Defendant asked for additional transcripts and told the court he was considering hiring private counsel. The court continued the matter to March 10, 2021, for status.

¶ 18    On March 10, 2021, the jail was on lockdown. The court continued the matter to March 19, 2021.

¶ 19    On March 19, 2021, defendant refused to leave his jail cell. The State advised the court that it would wait to tender to defendant in open court its answer to defendant's February 24, 2021, supplemental discovery request. The State also gave the court a note received from defendant that was addressed to the court. In the note, defendant asked for a status date the following week. The court set March 24, 2021, as the final status date, telling the State that it could then tender in open court its answer to defendant's supplemental discovery request.

¶ 20    On March 24, 2021, defendant advised the court that he was "still seeking discoverable evidence." The court told defendant that, "unless [he was] able to tell [the court about] the relevance of [his] other transcript requests, unfortunately at this time [the court could not] give those to [him]." Defendant asserted that he wanted the transcripts in order to raise a jurisdictional issue and file a motion for sanctions against the State. The court denied defendant's request for additional transcripts, finding the transcripts irrelevant. The court then advised defendant about

how his jury trial would proceed, telling defendant that, if he refused to follow the rules, he would have to conduct his trial from jail via video. Defendant objected, telling the court that he still had multiple pretrial motions to file. The State then tendered to defendant its answer to defendant's February 24, 2021, supplemental discovery request, which had been addressed on the previous court date. Over defendant's objection, the court set April 26, 2021, as the trial date.

¶ 21    On April 22, 2021, four days before trial, defendant again refused to appear in court. After acknowledging that defendant wished to represent himself, the court appointed Messer as standby counsel for defendant, believing that defendant would benefit from such representation. Messer told the court that she had spoken with defendant in the jail, advising him that she might be appointed as standby counsel.

¶ 22    After a recess, defendant appeared in court. The court told defendant that it appointed Messer as standby counsel. The court then advised defendant that he was still representing himself but, if he had any questions, he could ask Messer. Defendant had no objection. The court then told defendant that it wanted to hear his pretrial motions, if any, at 9 a.m. on the first day of trial. Defendant interjected that he wished to address the filing of pretrial motions. Defendant asserted that, due to the restrictions in place because of the COVID-19 pandemic, he was unable to fully prepare his motions. Thus, defendant asked for a continuance to further prepare. The court advised defendant that it would not hold his motions to "really high" standards and would give him time to present his motions on the day of trial. Defendant objected to having trial on the scheduled date, and the court overruled his objection.

¶ 23    On April 26, 2021, the day of trial, the trial court asked defendant if he had any motions to make. Defendant answered that he was not ready for trial because he did not have all the discovery he requested. The court noted that defendant had represented himself since October 2020, yet he

had filed no motions. Defendant replied that he was "still waiting to see [his] discovery." The court denied defendant's motion to continue, asking defendant if he had "any other motions *** to present." Defendant said, "No. Just the fact that you denied me discovery." The court then asked defendant if he had anything else to say before trial, and defendant advised the court that he would not participate in his trial. The following exchange was had:

"THE COURT: Well, if you[, defendant,] don't participate in your trial, then I will advise you that if you refuse to participate in your trial, then I can find that you are willfully refusing to participate in your trial. If the State requests to proceed, then we can proceed pursuant to [section] *** 115-4[.1] [of the Code]. I must advise you that you have a constitutional right to appear at trial, confront and cross-examine witnesses, put on evidence and witnesses on your own behalf, object to the State's evidence, and testify on your own behalf, and tell your side of the story among other rights. Your failure to appear or participate will waive these and other rights and the trial may proceed at the request of the State in your absence.

State, do you wish to proceed on [defendant's] trial?

MS. SCHOLL [(ASSISTANT STATE'S ATTORNEY)]: We do. We are ready, Your Honor.

THE COURT: All right. So, [defendant], I'm going to give you a chance to appear, but if you don't, then the public defender will be representing you *in absentia*, okay?

THE DEFENDANT: That will be fine.

THE COURT: That will be okay with you?

THE DEFENDANT: No, it's not. I object to the trial, Your Honor.

THE COURT: Okay. You object to the trial, but you understand what I'm saying?

THE DEFENDANT: I do.

MS. SCHOLL: I think—

THE COURT: All right. Then just have a seat and we will start your trial in about a half an hour.

* * *

THE DEFENDANT: I'm going to go back to my cell.

THE COURT: Okay.

***

THE COURT: *** And the public defender is appointed to represent [defendant]. The public defender, of course, was advised last week that she would be a stand-by counsel, but because [defendant] is refusing to participate in his case, the public defender will do the trial *in absentia*.

[MS. MESSER (DEFENSE COUNSEL)]: Judge, may I just be heard on that ***?

THE COURT: Sure.

MS. MESSER: I will—you know, it's sort of a strange objection, but I will object to the appointment in this case. [Defendant] has not indicated his desire to have counsel representing him further. Even if he did, it would be my request to continue the case on his behalf as I have absolutely very little information and I have not prepared any case. I would not be in a competent position to represent him at a trial.

THE COURT: The Court notes that pursuant to [section] ***115-4.1 [of the Code], the Court finds the defendant is willfully refusing to participate in his trial. The State has requested the case to proceed. The case may proceed as a trial *in absentia*, however, pursuant to [section] *** 115-4.1 [of the Code], an attorney must be present at that time. It

doesn't say that the attorney has to say that they are ready for trial. It says the attorney must be present at that time.

Therefore, the public defender will do the best they can. The public defender's office has a long and storied history of representing indigent clients in the best manner they possibly can under difficult circumstances.

\*\*\*

So I understand the position that the public defender is in. \*\*\* This [case] is a driving while license suspended. It's not the most complex of cases. I'm sure the public defender will do a fine job.

Your objection is noted and denied.

MS. MESSER: And just for the record, I do agree that that's what the statute says although I do believe that that means where the person is already represented by counsel and has not indicated his indication to proceed *pro se*. I believe [defendant] does not wish to have any additional representation.

THE COURT: [Defendant] by his conduct has refused to participate and the Court finds that his refusal to participate waives his constitutional right to represent himself."

¶ 24 A lunch break was taken before the proceedings continued.

¶ 25 Right after the lunch break, Messer objected to appointing her as counsel for defendant, arguing that section 115-4.1(a) of the Code allows the appointment of counsel only for those defendants who, unlike defendant, are not in custody. The court responded as follows:

"THE COURT: All right. The Court feels that [defendant] has a set of constitutional rights. One of those rights is to be represented by counsel. [Defendant] has indicated he wants to represent himself, but then he's also indicated he refuses to participate in the trial.

He has not expressly waived representation. He says he wants to represent himself, but then he is not going to appear, so it puts the Court in somewhat of a conundrum.

If, in fact, he had counsel, there would be no question I think that he can—should have an attorney represent him. In an abundance of caution regarding any waiver of Sixth Amendment rights, the Court understands that this puts the public defender's office in an unusual position, but not one that hasn't happened in the past as far as this Court is concerned.

So the public defender's motion to withdraw and not have anything to do with the case is respectfully denied."

¶ 26 The State filed a motion to have defendant brought into court during trial for identification purposes. Messer objected to the motion. The trial court told the State that it wanted to "avoid" defendant being "dragged up here, stood over by the door in his jail suit, and identified by the police officer." The State said it believed that defendant's identification could be proved through other means, but it asked the court to reserve ruling on the motion. The court agreed to do so.

¶ 27 During *voir dire*, Messer's cocounsel questioned the potential jurors, asking them if defendant's absence would influence their verdict. Messer gave an opening statement. Messer and cocounsel cross-examined witnesses. Messer objected to the admission of evidence. At the close of the State's case, Messer made two motions. First, she moved to suppress evidence. She argued that the State failed to establish that the do-not-enter sign was on public property such that defendant's disregard of it was a traffic offense supporting a stop. Second, Messer moved for a directed verdict. The trial court denied both motions. Messer then noted that the court had not yet ruled on the State's motion to produce defendant for identification. The court denied the State's motion, finding that defendant's identification was established through other means.

¶ 28    At the jury instruction conference, Messer persuaded the trial court to give a nonpattern instruction informing the jury that defendant's absence from the proceedings could not be held against him. The jury found defendant guilty of driving while his license was revoked. Defendant's entire trial, including picking the jury, lasted less than 3½ hours.

¶ 29    Messer filed a motion for a new trial, which defendant adopted, arguing that the trial court erred in appointing her and denying her motion for a continuance. Defendant was sentenced to four years' imprisonment. He moved the court to reconsider and also filed a motion to dismiss the charge because his due process rights were violated.

¶ 30    Before the trial court ruled on any of the posttrial motions, defendant appealed. He then moved to dismiss the appeal in this court, and we granted that motion. On remand, the trial court denied all of defendant's posttrial motions. This timely appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32                          A. Applicability of Section 115-4.1(a)

¶ 33    The overriding issue presented in this appeal is whether the trial court denied defendant's right to a fair trial when it appointed Messer to conduct defendant's trial and denied her request for a continuance. In addressing that issue, we first consider whether, as the trial court found, section 115-4.1(a) of the Code mandated that counsel be appointed for defendant. We consider that issue *de novo*. See *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 48 (trial court's interpretation of a statute reviewed *de novo*)

¶ 34    Section 115-4.1(a) of the Code provides:

“When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding

trial, the court may commence trial in the absence of the defendant. Absence of a defendant as specified in this Section shall not be a bar to indictment of a defendant, return of information against a defendant, or arraignment of a defendant for the charge for which pretrial release has been granted. If a defendant fails to appear at arraignment, the court may enter a plea of 'not guilty' on his behalf. If a defendant absents himself before trial on a capital felony, trial may proceed as specified in this Section provided that the State certifies that it will not seek a death sentence following conviction. Trial in the defendant's absence shall be by jury unless the defendant had previously waived trial by jury. The absent defendant must be represented by retained or appointed counsel. The court, at the conclusion of all of the proceedings, may order the clerk of the circuit court to pay counsel such sum as the court deems reasonable, from any bond monies which were posted by the defendant with the clerk, after the clerk has first deducted all court costs. If trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial. All procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the defendant were present in court and had not either had his or her pretrial release revoked or escaped from custody. The court may set the case for a trial which may be conducted under this Section despite the failure of the defendant to appear at the hearing at which the trial date is set. When such trial date is set the clerk shall send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial. Such notification shall be required when the defendant was not personally

present in open court at the time when the case was set for trial." 725 ILCS 5/115-4.1(a) (West 2020).

¶ 35    Our supreme court has examined this provision and determined that, in light of the legislative debates and section 113-4(e) of the Code (*id.* § 113-4(e)), which requires the trial court to warn a defendant that a trial may proceed in his absence if he escapes from custody or is released on bond and fails to appear, section 115-4.1(a) does not apply to a defendant who is in custody, *i.e.*, a defendant who, like defendant here, failed to post bond. See *People v. Eppinger*, 2013 IL 114121, ¶¶ 23, 36-37, 39. Justice Burke dissented in *Eppinger*, noting that the majority's opinion overlooked the possibility that, in enacting section 115-4.1(a), the legislature's discussion of bail jumpers did not by itself mean that section 115-4.1(a) was restricted to defendants released on bond. *Id.* ¶ 50 (Burke, J., dissenting, joined by Freeman, J.). That is, the court could not "infer from the legislators' mere silence in this instance that the statute was not intended to apply to an in-custody defendant." *Id.* Also problematic to Justice Burke was that the majority's position "afford[ed] *greater* protections to those defendants who jump bail than those who remain in-custody." (Emphasis in original.) *Id.* ¶ 55.

¶ 36    Although we certainly understand Justice Burke's reservations about the majority opinion in *Eppinger*, we are bound to follow it. See *John Crane, Inc. v. Admiral Insurance Co.*, 2013 IL App (1st) 093240–B, ¶ 69 ("Once our supreme court has declared the law with respect to an issue, this court must follow that law, as only the supreme court has authority to overrule or modify its own decisions."). Thus, we must conclude that section 115-4.1(a) of the Code did not mandate that counsel be appointed for defendant.

¶ 37    This conclusion necessarily raises a number of issues. Because section 115-4.1(a) does not apply to defendant, we question whether the trial court could appoint Messer, an assistant public

defender, without first determining whether defendant was indigent. See 725 ILCS 5/113-3(b) (West 2020) ("The court shall require an affidavit signed by any defendant who requests court-appointed counsel. Such affidavit shall *** [contain] sufficient information to ascertain the assets and liabilities of that defendant."). Some evidence in the record suggests that defendant was not indigent and, thus, would not qualify for the appointment of counsel. For example, defendant originally posted bail and retained Flavin to represent him. Flavin later withdrew because defendant wanted extensive discovery that Flavin apparently found irrelevant. After Flavin withdrew, defendant asked at least once for time to obtain private counsel. These facts certainly suggest that defendant had the financial ability to retain a private attorney. On the other hand, defendant never posted bail after his original bail was forfeited, and the trial court set a new bail amount. Because defendant failed to post bail the second time, he remained in custody. This suggests that defendant was indigent and would be entitled to the appointment of a public defender. As a result, we consider the issues raised in this appeal as if defendant was indigent and, therefore, entitled to the appointment of counsel.

¶ 38    The appointment of Messer as counsel of record for defendant presents other issues that more closely align with the issue defendant raises on appeal. Those issues are (1) was defendant denied a fair trial when he never expressly waived his right to represent himself; (2) if defendant waived his right to proceed *pro se*, could the trial court appoint Messer counsel of record; (3) if Messer could be appointed counsel of record, did error arise when the trial court denied Messer's motion for a continuance; and (4) if it was not error to deny Messer's motion for a continuance, was Messer and her cocounsel's representation of defendant at trial sufficient. We consider each of these issues in turn.

¶ 39                    B. Waiver of Right to Proceed *Pro Se*

¶ 40    "The sixth amendment to the United States Constitution, which is made applicable to the States through the due process clause of the fourteenth amendment, guarantees that, '[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence.' " *People v. Anderson*, 2021 IL App (2d) 190128, ¶ 21 (quoting U.S. Const., amend. VI, and citing U.S. Const., amend. XIV). The Illinois Constitution also protects a defendant's right to counsel. See Ill. Const. 1970, art. I, § 8. The right to counsel under the Illinois Constitution, which is broader than the corresponding right under the United States Constitution, is codified in section 113-3(b) of the Code (725 ILCS 5/113-3(b) (West 2020)). *Anderson*, 2021 IL App (2d) 190128, ¶ 22. Concomitant with a criminal defendant's right to counsel is the right to proceed *pro se*, though that right is not expressly provided for in either the United States or Illinois Constitutions. See *People v. Simpson*, 204 Ill. 2d 536, 573-74 (2001). Although it is well recognized that a defendant has the right to proceed *pro se*, "[c]ourts must 'indulge in every reasonable presumption against waiver' of the right to counsel." *People v. Baez*, 241 Ill. 2d 44, 116 (2011) (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977)).

¶ 41    To invoke the right to proceed *pro se*, a defendant must knowingly and intelligently waive his right to counsel. *People v. Rodriguez-Aranda*, 2022 IL App (2d) 200715, ¶ 33. "Such waiver must be clear, unequivocal, and unambiguous." *Id.* That said, a defendant's right to represent himself is not without limitations. *Id.* Specifically, a trial court may deny a defendant's right to represent himself:

> "where [the] defendant's lack of civility and decorum would result in an abuse of the dignity of the courtroom [citation], where [the] defendant abuses the right to waive counsel as a tactic to delay or disrupt proceedings [citation], or where [the] defendant suffers from

a severe mental illness and thus is not competent to conduct trial proceedings without counsel [citation]." *Id.*

¶ 42     In resolving whether the trial court erred, we observe that this case does not present the usual situation where the defendant claims that the court violated his right to self-representation. Here, the trial court did not deny defendant's request to represent himself. Rather, defendant asked to proceed *pro se*, the trial court granted that motion, and later the court essentially found that defendant, through his actions, waived his right to represent himself.

¶ 43     We review under an abuse-of-discretion standard a trial court's denial of a defendant's right to proceed *pro se*. *Id.* A trial court abuses its discretion only when its " 'decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court.' " *Id.* (quoting *Seymour v. Collins*, 2015 IL 118432, ¶ 41). We believe the abuse-of-discretion standard also applies when a trial court terminates a defendant's right to represent himself. See *People v. Carson*, 104 P.3d 837, 841 (Cal. 2005) ("When a defendant exploits or manipulates his [*pro se*] status *** the trial court does not abuse its discretion in determining he has forfeited the right of continued self-representation."); but see *United States v. Luscombe*, 950 F.3d 1021, 1029 (8th Cir. 2020) ("We review de novo the district court's decision to terminate the defendant's right to self-representation.").

¶ 44     Neither of the parties cites authority analogous to the situation here. In conducting our own research, we discovered *State v. Whalen*, 961 P.2d 1051 (Ariz. Ct. App. 1997), which we find instructive.

¶ 45     In *Whalen*, the defendant and his codefendants moved to represent themselves. *Id.* at 1053. Although the trial court found that the defendants knowingly and intelligently waived their right to counsel, it appointed standby counsel for the defendants. *Id.* at 1053-54. The defendant alone

objected to the appointment of standby counsel, and the trial court denied his motion. *Id.* at 1054. Before trial, the defendants alerted the court that they believed the court lacked personal jurisdiction over them and that "cross[ing] the bar into the front of the courtroom" would waive their objection to jurisdiction. *Id.* The court assured the defendants that it had jurisdiction over them and told them that they would not be permitted to present any defense unless and until they agreed to do so from the front of the courtroom. *Id.* The defendants refused to do so. *Id.* The court found that the defendants had " 'voluntarily absented themselves' " from the proceedings. *Id.* The court then ordered standby counsel to represent the defendants *in absentia*. *Id.* Counsel expressed reservations about doing so, as the defendants did not indicate they wanted representation. *Id.* The court insisted that counsel represent the defendants, noting that the defendants failed to follow even the minimal rules of coming forward and sitting at counsel's table. *Id.* At this point, the defendant left the courtroom. *Id.* He appeared sporadically during his trial. *Id.* The jury found him guilty of various offenses. *Id.* at 1053.

¶ 46    The defendant appealed, arguing, among other things, that the trial court committed reversible error when, knowing his objections, it prevented him from conducting his defense from the gallery. *Id.* at 1054. The appellate court disagreed. *Id.* Although the court agreed that the defendant had a right to proceed *pro se*, it observed that that right exists "only so long as the defendant 'is able and willing to abide by the rules of procedure and courtroom protocol.' " *Id.* (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984)). In reaching its conclusion, the court rejected the defendant's argument that his right to represent himself was improperly terminated, because his conduct did not rise to the level of deliberate " 'serious and obstructionist misconduct,' " which the United States Supreme Court recognized as a basis to terminate a

defendant's right to proceed *pro se*. *Id.* at 1054-55 (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). The court observed:

> "We do not find that [a] court's ability to terminate a defendant's right to self-representation is as circumscribed as [the defendant] claims. Initially, we find very little instructive caselaw pertaining to the pro se defendant's refusal to follow court-imposed protocol. The United States Supreme Court, federal courts, and state courts *** have not yet determined specific standards by which a trial court may deny or revoke a defendant's right of self-representation based upon in-court behavior. Although, as [the defendant] contends, *Faretta*, in a footnote, mentions, without elaboration, that 'the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct,' [citation], it does not suggest that this is the only type of behavior that may warrant such a revocation." *Id.* at 1055.

Likening the *termination* of the right to proceed *pro se* to the *denial* of the right to proceed *pro se*, the court continued:

> "[*State v. Martin*, 426 P.2d 639 (Ariz. 1967) (*en banc*)] holds that it is within the trial court's discretion to deny a defendant the right to continue his own defense if he acts in such a manner as to seriously disrupt the proceedings, either by refusing to exercise the decorum necessary to ensuring an orderly proceeding or by denying the court due respect ***. *Martin* upheld the trial court's denial of defendant's request to waive counsel, even though the court had not told the defendant it refused his request because of his ongoing in-court misconduct. In situations such as in *Martin*, the defendant's actions often make an orderly proceeding impossible and, as is often the case, the obstreperous behavior is for

this very purpose. Thus, the necessity of denying or withdrawing the right of self-representation is often clear." *Id.*

All of that aside, the court observed that, "although [the defendant] refused to cross the bar into the front of the courtroom, [it could not] say whether [the defendant] intended to disrupt the trial process, or whether he was aware that his unwillingness to go beyond the spectator section could result in such disruption." *Id.* Nevertheless, the court determined that no error arose when the trial court exercised its discretion and terminated the defendant's right to represent himself. *Id.* at 1055-56. It found that the trial court engaged in every reasonable presumption against the waiver of counsel and admonished the defendant that his right to proceed *pro se* would be terminated if he failed to follow the court's protocols. *Id.*

¶ 47 We believe this case presents a stronger case for finding a proper termination of a defendant's right to proceed *pro se*. First, unlike in *Whalen*, the record reflects that defendant intentionally or willfully disrupted the trial process. Even though defendant's case was not complex, he dragged it out for several months. He repeatedly assured the trial court that he would file his pretrial motions soon, but he never filed any motions. This behavior effectively stalled the case—"mak[ing] an orderly proceeding impossible" (*id.* at 1055). Second, like in *Whalen*, after defendant alerted the court that he would not participate in his trial, the court admonished defendant that Messer would represent him and that his trial would proceed without him. Specifically, the court told defendant that "[it was] going to give [him] a chance to appear, but if [he did not], then [Messer] will be representing [him] *in absentia*." Defendant replied, "That will be fine." The court immediately asked, "That will be okay with you?" Defendant responded, "No, it's not. I object to *the trial*, ***." (Emphasis added.) Although the court indulged in every reasonable presumption against the waiver of counsel, the court could properly find that defendant

waived his right to proceed *pro se* and objected only to having a trial. That said, even if defendant's objection to "the trial" is viewed as an objection to having Messer represent him, we cannot conclude that terminating defendant's right to represent himself was improper. Like the trial court in *Whalen*, here, the court acted well within its discretion in terminating defendant's right to proceed *pro se* after giving him notice that Messer would represent him if he did not appear at trial. See *id.* at 1056 ("Because we find that: (1) it was within the trial court's discretion to require [the defendant] to conduct his defense from the front of the courtroom, and (2) the court provided [the defendant] with clear, unambiguous, and timely warnings that he would lose the right to represent himself unless he was willing to follow this order, we conclude that the trial court did not err by revoking [the defendant's] right of self-representation.").

¶ 48    To summarize, defendant waived his right to represent himself. When he objected to *only* "the trial," he acquiesced in having Messer represent him, as he did not object to her representation. That said, *even if* defendant's objection to "the trial" can be viewed as an objection to Messer's representation, defendant *voluntarily absented* himself from the proceedings knowing full well that the trial would continue without him *and* with Messer representing him. This is not to say that the right to represent oneself is not a vital right that needs to be protected. Rather, with our decision here, we are holding only that, *under certain circumstances*, a defendant's right to proceed *pro se* can be waived and terminated.

¶ 49                    C. Appointing Messer Counsel of Record

¶ 50    As the above analysis illustrates, a defendant's rights do not exist in a vacuum and must be balanced against the State's right to a "fair trial conducted in a judicious, orderly fashion." *United States v. Dujanovic*, 486 F.2d 182, 186 (9th Cir. 1973). Trial courts "confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the

circumstances of each case." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). In some cases, standby counsel is appointed to temper disruptions a defendant causes. See *People v. Brown*, 80 Ill. App. 3d 616, 626 (1980); *People v. Heidelberg*, 33 Ill. App. 3d 574, 592 (1975). Ordering standby counsel to serve as counsel of record is proper, though not required, in similar situations where the defendant's conduct has proved disruptive and the defendant is voluntarily absent from the proceedings. See *Whalen*, 961 P.2d at 1058; see also *People v. Gibson*, 2017 IL App (1st) 143566, ¶ 31 ("The trial court did not abuse its discretion in refusing to reappoint the public defender when [the defendant] made his final request [for counsel], and did not err in allowing a trial *in absentia*, [without] counsel, when [the defendant] refused to come out of the lockup.").

¶ 51    We review the appointment of standby counsel under the abuse-of-discretion standard. *People v. Hui*, 2022 IL App (2d) 190846, ¶ 56. We believe that this same standard also applies when a trial court orders standby counsel to serve as counsel of record. *Id.* ("The trial court's discretion reaches to the appointment of standby counsel and the determination of the extent and nature of standby counsel's involvement."); *In re Robertson*, 45 Ill. App. 3d 148, 151 (1977) (decision regarding appointment of counsel of record reviewed under abuse-of-discretion standard).

¶ 52    Under the circumstances defendant created here, we determine that the trial court did not abuse its discretion in appointing Messer as standby counsel. We also conclude that the trial court did not abuse its discretion when it elevated Messer's position as standby counsel to that of counsel of record. Defendant failed to appear for his trial, and the court, just as it warned defendant, appointed Messer to represent him *in absentia*.

¶ 53    We again find *Whalen* instructive. There, the defendant argued that the trial court erred in ordering standby counsel to represent him at trial. *Whalen*, 961 P.2d. at 1057. The appellate court

found the defendant's claim unavailing. *Id.* The court noted that "this [was] not a circumstance in which the [trial] court 'chose' defense counsel over the defendant"; rather, the trial court "appointed counsel by default after finding that [the defendant] had 'voluntarily absented' himself from" the proceedings—which the trial court had the authority to do. *Id.* That is, when a defendant refuses to comply with a court's minimal requirement of sitting at counsel's table and then physically absents himself from the proceedings, a trial court faced with the dilemma of how to proceed commits no error in ordering standby counsel to represent the defendant at trial. *Id.* at 1058.

¶ 54    The same holds true here. Although defendant here, like the defendant in *Whalen*, certainly could have represented himself at trial, he voluntarily absented himself from the proceedings, as the trial court found, when he refused to appear in court and represent himself. Faced with the dilemma of what to do, the trial court, like the trial court in *Whalen*, did not abuse its discretion when it ordered Messer to represent defendant at his trial *in absentia*.

¶ 55    The New Hampshire Supreme Court's decision in *State v. Davis*, 650 A.2d 1386 (N.H. 1994), provides additional support. There, the defendant, who remained in custody, refused to attend his trial. *Id.* at 1388. Appointed standby counsel appeared at trial, and the defendant was tried *in absentia* and convicted. *Id.* On appeal, the defendant argued, among other things, that the trial court erred in holding a trial *in absentia*. *Id.* The supreme court disagreed (*id.*), observing:

> " 'There is no prohibition against [the right to be present at criminal proceedings] being waived as the result of a defendant's voluntary absence from certain proceedings.' [Citation.] We hold that this principle is equally applicable to an in-custody criminal defendant who refuses to attend court proceedings. Trials are not to be held according to the fancy of the defendant. [Citation.] The defendant's 'flat refusal to attend trial was,

without question, an explicit and intentional relinquishment of a known right and an undeniable waiver of his constitutional right to be present in court at the trial and to confront adverse witnesses.' [Citation.]" *Id.* at 1389.

¶ 56 Although the right at issue in *Davis* was different from that here, *Davis*'s reasoning applies. We believe that, given the delays caused by defendant's repeated broken promises to tender to the trial court his "pretty close to *** ready" pretrial motions, defendant was attempting to dictate how his case would proceed. Like the court in *Davis* noted, defendant's trial could not be held according to his own whims and fancies.

¶ 57                                    D. Messer's Motion to Continue

¶ 58 Section 114-4 of the Code (725 ILCS 5/114-4 (West 2020)) governs motions for a continuance in criminal cases. "[G]ranting of a continuance based upon defense counsel's lack of preparation rests within the trial court's discretion." *People v. Jefferson*, 35 Ill. App. 3d 424, 426 (1976). "[T]he denial of such continuance *** will not be disturbed on review unless this discretion has been abused." *Id.* "Whether there has been an abuse of discretion necessarily depends upon the facts and circumstances in each case." *People v. Walker*, 232 Ill. 2d 113, 125 (2009).

¶ 59 Although " '[t]here is no mechanical test *** for determining the point at which the denial of a continuance in order to accelerate the judicial proceedings violates the substantive right of the accused to properly defend[,]' " courts have delineated certain factors to address. *Id.* (quoting *People v. Lott*, 66 Ill. 2d 290, 297 (1977)). For example, courts may consider (1) "the movant's diligence," (2) "the defendant's right to a speedy, fair and impartial trial," (3) "the interests of justice," (4) "whether counsel for defendant was unable to prepare for trial because he or she had been held to trial in another cause," (5) "the history of the case," (6) "the complexity of the matter,"

(7) "the seriousness of the charges," (8) "docket management," (9) "judicial economy," and (10) "inconvenience to the parties and witnesses." *Id*. at 125-26.

¶ 60     Given the circumstances here, we determine that the trial court did not abuse its discretion in denying Messer's motion for a continuance. Although Messer moved for a continuance immediately after being appointed counsel of record, she had been appointed standby counsel four days previously and had spoken with defendant. While her familiarity with defendant's case certainly was not extensive given that she was initially appointed only as standby counsel, Messer had at least the lunch break to prepare for defendant's case, which was not complex. See *People v. Jackson*, 2013 IL 113986, ¶ 16 ("It is well settled that the only elements necessary to prove the offense of driving while license suspended or revoked are (1) the act of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege." (Internal quotation marks omitted.)). The charge, though not minor, certainly was not the most serious. See 625 ILCS 5/6-303(d-5) (West 2018) ("Any person convicted of a fifteenth or subsequent violation of this Section is guilty of a Class 2 felony, and is not eligible for probation or conditional discharge, if[ ]" various factors are met.). Moreover, defendant's case was beyond stale, with more than 29 months passing between his arrest and trial. The only witnesses to the offense other than defendant were the two officers who arrested him. Finally, the State had been prepared for trial on numerous occasions and objected at least once to a continuance.

¶ 61     In reaching our conclusion, we find two cases helpful: *Jefferson* and *United States v. Maggert*, No. 10-14112, 2011 WL 2119693 (11th Cir. May 31, 2011), which neither party cited. In *Jefferson*, the defendant, who was charged with burglary, was arraigned and appointed an assistant public defender on the same day. *Jefferson*, 35 Ill. App. 3d at 425. Also that day, (1) the defendant answered ready for trial, contrary to counsel's advice, and (2) counsel made a motion

for discovery, which the trial court granted. *Id.* The commencement of trial was continued to the next day, where a new assistant public defender represented the defendant. *Id.* New counsel asked the trial court for a continuance because she "was not ready to proceed to trial," advising the court that she had spoken with the defendant, who had agreed to continue the case until counsel had "received full and complete discovery." *Id.* The State answered ready for trial and tendered to counsel all the discovery it had, which included all police reports but not the grand jury minutes or the transcript from the preliminary hearing. *Id.* Counsel renewed her motion for a continuance, the trial court denied the motion, and the court set the defendant's trial for later that afternoon. *Id.* When the case was recalled, counsel again moved for a continuance or to withdraw for lack of preparedness. *Id.* at 425-26. The court denied both motions. *Id.* at 426. Because of her lack of preparedness, counsel did not participate in *voir dire*. *Id.* She tried the case under protest, and the jury found the defendant guilty. *Id.* One week after trial, counsel was given a transcript from the preliminary hearing. *Id.*

¶ 62    On appeal, the defendant argued that the trial court abused its discretion in denying counsel's motion for a continuance. *Id.* The appellate court agreed, noting that "[o]nce counsel is appointed by the court, such counsel must be given a reasonable period of time in which to prepare a defense." *Id.* at 427. The only two factors delineated and considered by the court in finding that the trial court abused its discretion were (1) counsel's diligence in requesting a continuance and (2) the extent to which the denial of the continuance "embarrassed the defendant in preparing his defense and prejudiced his rights." *Id.* at 426. The court concluded that "counsel's conduct in requesting a continuance on the first day she was appointed and the first day after arraignment unequivocally exemplified her due diligence." *Id.* The court also determined that denying the request for a continuance inhibited the defendant in preparing his defense and prejudiced his rights,

as counsel was given *complete* discovery only after trial. *Id*. at 427. In particular, the court determined that giving counsel police reports on the day of trial hindered if not eliminated counsel's ability to question witnesses who could be called for the defense. *Id*. at 426-27.

¶ 63    Although *Jefferson* is similar to this case in that Messer asked for a continuance on the day she was appointed counsel of record, we find *Jefferson* distinguishable in all other respects. Putting aside the fact that defendant had over 29 months to prepare for what appeared to be a straightforward case, nothing indicated that Messer did not have complete discovery before trial began. Moreover, nothing indicated that there were any witnesses other than defendant and the two officers. Last, unlike counsel in *Jefferson*, Messer had cocounsel, who questioned the potential jurors and astutely asked them whether defendant's absence would affect their decision.

¶ 64    This case is more in line with *Maggert*. There, the defendant was charged with tax evasion. *Maggert*, 2011 WL 2119693, at *2. He indicated that he would retain counsel, then failed to do so and waived his right to counsel. *Id.* However, the trial court appointed standby counsel for the defendant. *Id.* The case was continued for over four months while the defendant sought to retain counsel. *Id.* The court warned the defendant that, if he failed to obtain counsel, he would have to proceed to trial *pro se* with the help of standby counsel. *Id.* The defendant failed to obtain counsel. *Id.* At his trial, the defendant represented himself during jury selection and gave an opening statement. See *id.* The next day, after the government finished questioning its first witness, the defendant told the court that he wanted standby counsel to conduct the cross-examination. *Id.* The court advised the defendant that he could proceed *pro se* or have standby counsel represent him, but not both. *Id.* The defendant elected to have standby counsel represent him. *Id.* Standby counsel moved for a second continuance, to consult with experts and prepare a defense. *Id.* The court denied the motion. *Id.* A jury found the defendant guilty. *Id.*

¶ 65    On appeal, the defendant argued that the trial court abused its discretion in denying the motion for a second continuance. *Id.* at \*3. The appellate court disagreed. *Id.* In doing so, the court observed that, " '[u]nder certain circumstances, denial of a motion for continuance of trial may vitiate the effect of' the Sixth Amendment's right to counsel to such an extent that it results in a due process violation." *Id.* (quoting *United States v. Valladares*, 544 F.3d 1257, 1262 (11th Cir. 2008) (*per curiam*)). Accordingly, " '[t]o prevail on such a claim, a defendant must show that the denial of the motion for continuance was an abuse of discretion which resulted in specific substantial prejudice' by identifying 'relevant, non-cumulative evidence that would have been presented if [the defendant's] request for a continuance had been granted.' " *Id.* (quoting *Valladares*, 544 F.3d at 1262).

¶ 66    The appellate court concluded that the trial court did not abuse its discretion in denying the second continuance, because (1) the first continuance was generous; (2) "[s]tandby counsel was available for most of that time, but [the defendant] did not seek her assistance"; (3) "[w]hen the [trial] court granted [the defendant's] first continuance request, it warned [him] that the new trial date was firm and no further continuances would be granted"; and (4) "[the defendant] let the trial begin without raising any concern and did not ask standby counsel to take over until the second day of trial." *Id.* Moreover, the appellate court found no prejudice from the denial of the second continuance, because (1) "the record reflect[ed] that once standby counsel took over, she was able to cross-examine witnesses, object to evidence and offer objections to the jury instructions"; and (2) "[the defendant] ha[d] not pointed to any relevant, noncumulative evidence he would have presented if his second continuance request had been granted." *Id.*

¶ 67    This case is stronger than *Maggert*. Although counsel of record in *Maggert* served longer as standby counsel than Messer, both attorneys asked for a continuance on the day that they were

appointed counsel of record. Counsel in *Maggert* asked for a continuance because she needed to consult with experts who could affect a defense. This suggests that, unlike this case, the case in *Maggert* was complex, which is perhaps not surprising given that the charge was tax evasion. Yet, despite the apparent complexities of the case in *Maggert*, the appellate court determined that the trial court did not abuse its discretion in denying counsel's motion for a continuance. Like the defendant in *Maggert*, defendant has not pointed to any evidence that could have been presented at trial if a continuance were granted. Indeed, defendant has not indicated what more Messer could have done if the case were continued.

¶ 68                     E. Effective Assistance of Counsel

¶ 69     "In determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984)." *People v. Falco*, 2014 IL App (1st) 111797, ¶ 14. "To prevail on a claim of ineffective assistance of counsel, a defendant must show [(1)] that counsel's performance was deficient and [(2)] that the deficient performance prejudiced the defendant such that he was deprived of a fair trial." *Id.* "If the defendant fails to establish either prong, his ineffective assistance claim must fail." *Id.* Because "the facts relevant to [defendant's] ineffective assistance of counsel claim are not disputed, our review is *de novo*." *Id.*

¶ 70     Defendant argues that his right to the effective assistance of counsel was minimized when the trial court "decided [he] was entitled only to counsel that is 'present,' rather than counsel that is competent, and where, despite counsel's concerns of being unprepared, the court ordered counsel to 'do the best they can.' " Although defendant is factually correct about what transpired, he overlooks what is relevant, *i.e.*, Messer's and cocounsel's performance at trial. Messer and

cocounsel were more than just "present." Messer and cocounsel participated in *voir dire* and the jury instruction conference, gave opening statements and closing arguments, cross-examined witnesses, objected to evidence, and moved for a directed verdict and to suppress evidence. Although defendant claims that Messer's representation was defective because she moved to suppress evidence after the State rested rather than before the trial began, we do not find this material, especially given that the court fully entertained the motion at that later point. Also, Messer astutely developed a record pertinent to the suppression motion, including the admission by one of the arresting officers on cross-examination that she did not know if the do-not-enter sign was on private or public property.

¶ 71    *Bowles v. Dugger*, 838 F.2d 1145 (11th Cir. 1988) (*per curiam*), is instructive. There, the defendant waived his right to counsel, was appointed standby counsel, and, during his trial, revoked his right to represent himself. *Id.* at 1146. Standby counsel, who was ordered to continue with the case, expressed a reluctance to do so and asked for a continuance. *Id.* The trial court denied counsel's motion for a continuance, and the defendant's trial continued. *Id*. The defendant was convicted of trafficking cannabis and methaqualone. *Id.*

¶ 72    On appeal, the defendant argued that standby counsel was ineffective. *Id.* The appellate court disagreed. *Id.* After observing that the defendant had no automatic right to a continuance, the court noted:

> "[I]n this case, despite [the defendant's] protestations, the record shows that [standby counsel] presented [the defendant's] defense in an able and competent manner. Given [what transpired], [the defendant] may not be heard to complain of the unfairness resulting from the situation which he knowingly orchestrated." *Id.* at 1147.

¶ 73    Here, as in *Bowles*, defendant was not entitled to an automatic continuance where he created the circumstances that resulted in Messer and cocounsel representing him at trial. Moreover, as in *Bowles*, nothing in the record suggests that Messer and cocounsel provided defendant with anything other than effective representation. They prevented the State from bringing defendant into court for purposes of identification—which would have negatively impacted defendant's case—and persuaded the trial court to instruct the jury not to hold defendant's absence against him. Defendant has not articulated anything more that counsel could have done to affect the outcome. Given the situation, we cannot conclude that Messer and cocounsel were ineffective. See *Maggert*, 2011 WL 2119693, at *3 (in addressing propriety of denial of the defendant's second motion for a continuance, court observed that standby counsel, who was subsequently appointed counsel of record, was not ineffective, because she cross-examined witnesses and objected to evidence and jury instructions; also, the defendant "ha[d] not pointed to any relevant, noncumulative evidence he would have presented if his second continuance request had been granted").

¶ 74    In reaching our conclusion, we briefly comment on defendant's claim that prejudice is presumed. Defendant argues that because he was denied the assistance of counsel at a critical stage—his trial—" ' "[n]o specific showing of prejudice [is] required." ' " *People v. Edwards*, 197 Ill. 2d 239, 251 (2001). This argument is misplaced. Defendant had counsel at trial, *i.e.*, Messer and her cocounsel. Thus, he was not denied counsel at a critical stage of the proceedings. To the extent that defendant argues he was denied counsel at a critical stage of the proceedings because Messer and cocounsel were merely " 'present,' " the record belies his position. As addressed above, Messer and cocounsel did not sit idly by while the State presented its case but, rather, they were active and effective advocates.

¶ 75    In conclusion, we determine that (1) section 115-4.1(a) of the Code does not apply to defendants in custody, (2) defendant waived his right to represent himself, (3) the trial court did not abuse its discretion in appointing Messer counsel of record, (4) the trial court did not abuse its discretion in denying Messer's motion for a continuance, and (5) Messer and her cocounsel were not ineffective.

¶ 76                                III. CONCLUSION

¶ 77    For these reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 78    Affirmed.

***People v. Talidis*, 2023 IL App (2d) 220109**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 18-CF-1110; the Hon. Robert A. Wilbrandt Jr., Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and R. Christopher White, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |